# IN THE FIRST JUDICIAL DISTRICT OF THE
# CIRCUIT COURT OF JASPER COUNTY, MISSISSIPPI

| | |
|---|---|
| TOBIE and KENYANA STENSON, Individually and as Parents and Next Friends of JASON COOPER, JR., a Minor; | Civil Action No. 21-CV-00039 |
| Plaintiffs, | |
| vs. | |
| KIM'S AUTOMOTIVE, INC. f/k/a CHRIS POSEY CHEVROLET-NISSAN, INC.; CHRIS POSEY, INC.; CHRIS POSEY CHEVROLET-NISSAN, INC.; NISSAN MOTOR CORPORATION; NISSAN NORTH AMERICA, INC.; and, DOES 1-10; | |
| Defendants. | |

## SUMMONS

THE STATE OF MISSISSIPPI



**EXHIBIT**

" **A** "

TO:   NISSAN NORTH AMERICA
c/o Its Registered Agent – CSC of Rankin County, Inc.
2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232

### NOTICE TO DEFENDANT

THE SECOND AMENDED COMPLAINT ATTACHED TO THIS SUMMONS IS
IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR
RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Second

Amended Complaint to John L. Davidson, Attorney for Plaintiff, to 1062 Highland Colony

Parkway, Suite 275, Ridgeland, Mississippi 39157. You may also email a copy to

*jdavidson@dbslawfirm.net*. Your response must be mailed or delivered within *thirty (30)* days

from the date of delivery of this Summons and Second Amended Complaint or a judgment by

default will be entered against you for the money or other things demanded in the Second

Amended Complaint.

You must also file the original of your response with the Clerk of this Court within a

reasonable time afterward.

Issued under my hand and the seal of the Court, this the 9th day of May, 2022.

BILLY G. RAYNER, CLERK
JASPER COUNTY, MISSISSIPPI

BY:

*Teresa R. Jones*



**OF COUNSEL:**

John L. Davidson, MSB #9073
DAVIDSON BOWIE, PLLC
1062 Highland Colony Parkway, Suite 275
Ridgeland, Mississippi 39157
#601-932-0028 (Telephone)
jdavidson@dbslawfirm.net

Tab Turner, Esq. *(admitted pro hac vice)*
Turner & Associates, P.A.
4705 Somers Avenue, Suite 100
North Little Rock, Arkansas, 72116
Telephone: (501) 791-2277
tab@tturner.com

## IN THE FIRST JUDICIAL DISTRICT OF THE
## CIRCUIT COURT OF JASPER COUNTY, MISSISSIPPI

| | |
|---|---|
| TOBIE and KENYANA STENSON, Individually and as Parents and Next Friends of JASON COOPER, JR., a Minor; | Civil Action No. 21-CV-00039 |
| Plaintiffs, | |
| vs. | |
| KIM'S AUTOMOTIVE, INC. f/k/a CHRIS POSEY CHEVROLET-NISSAN, INC.; CHRIS POSEY, INC.; CHRIS POSEY CHEVROLET-NISSAN, INC.; NISSAN MOTOR CORPORATION; NISSAN NORTH AMERICA, INC.; and, DOES 1-10; | |
| Defendants. | |

## SECOND AMENDED COMPLAINT
(JURY TRIAL DEMANDED)

COME NOW, the Plaintiffs, TOBIE and KENYANA STENSON, Individually and as Parents and Next Friends of JASON COOPER, JR., a Minor, who file this Second Amended Complaint against Kim's Automotive, Inc. f/k/a Chris Posey Chevrolet-Nissan, Inc., Chris Posey, Inc., Chris Posey Chevrolet-Nissan, Inc., Nissan Motor Corporation, Nissan North America, Inc. and Does 1-10 and in support state the following:

### PARTIES

1.     Plaintiffs Tobie and Kenyana Stenson are adult resident citizens of Laurel, Mississippi. They are the lawful parents and next friends of Jason Cooper, Jr., a Minor.

2.     Plaintiff Jason Cooper, Jr. was a citizen and resident of Heidelberg, Mississippi, at the time of the subject incident.  Plaintiff Cooper now resides with his parents in Laurel, Mississippi where he is under their care, treatment, and control.

1

3.      Defendant Kim's Automotive, Inc. f/k/a Chris Posey Chevrolet-Nissan, Inc. (hereinafter *"Kim's Auto"*) is a Mississippi corporation with its principal office address listed at 2516 Hwy 15 North, Laurel, Mississippi 39440. Kim's Automotive, Inc.'s has answered and appeared.

4.      Defendant Chris Posey, Inc. is a Mississippi corporation with its principal office address listed at 1312 Homewood Drive, Laurel, Mississippi 39440. Defendant Chris Posey, Inc. has answered and appeared.

5.      Defendant Chris Posey Chevrolet-Nissan, Inc. is a Mississippi corporation with its principal office address listed at 2516 Hwy 15 North, Laurel, Mississippi 39440. Defendant Chris Posey Chevrolet-Nissan, Inc. has answered and appeared.

6.      Defendant      Nissan      Motor      Corporation      ("NMC")      is      a Japanese automotive manufacturer headquartered in Nishi-ku, Yokohama, Japan, and is ultimately responsible for the design, manufacture, testing and distribution of the subject truck. The company sells its vehicles under the Nissan, Infiniti, and Datsun brands. The company operates as the Nissan Group. Defendant NMC may be served with process as permitted by law.

7.      Defendant      Nissan      North      America,      Inc.      ("NNA")      is      the North American headquarters, and a wholly owned subsidiary of, Defendant NMC. NNA is a California corporation with a principal place of business at One Nissan Way, Franklin, TN 37067, and maintains offices in Mississippi. Defendant NNA manufactures and sells Nissan and Infiniti brand cars, sport utility vehicles and pickup trucks through a network of approximately 1,082 Nissan and 211 Infiniti dealers in the United States, including 187 independent Nissan dealerships, 38 Infiniti retailers and 45 Nissan Commercial Vehicle dealers in Canada. The Tennessee location is Nissan's second headquarters location. Defendant NNA is registered to do business in Mississippi and its

agent for service of process is CSC of Rankin County, Inc., Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

8.  Venue is proper in the Circuit Court of Jasper County, Mississippi pursuant to Miss. Code Ann. § 11-11-3.

9.  The damages sustained by the Plaintiffs occurred in Jasper County, Mississippi.

10. The Court has personal jurisdiction over the Defendants because the subject Nissan Titan, which Plaintiffs owned and were operating at the time of the subject incident, was purchased from the Defendants in Jasper County, Mississippi.

11. The Nissan Defendants are subject to personal jurisdiction in Mississippi because Mississippi's long-arm statute permits a court to exercise personal jurisdiction consistent with constitutional due process.

12. Diversity of citizenship does not exist because the Plaintiffs and at least one of the defendants are both residents of Mississippi and each of the Mississippi defendants have answered and appeared.

13. The Mississippi long-arm statute provides three activities which will permit Mississippi courts to exercise personal jurisdiction over a nonresident defendant: (1) if that person has entered into a contract to be performed in Mississippi; (2) has committed a tort in Mississippi; or, (3) is conducting business in Mississippi pursuant to Miss. Code Ann. § 13–3–57. The Nissan Defendants are amenable to the personal jurisdiction of Mississippi courts under the tort prong because the tort committed manifested itself in Mississippi and caused injuries which occurred within the State of Mississippi. Here, the Plaintiffs suffered injuries while using their 2008 Nissan Titan during an automobile collision in Jasper County, Mississippi. Under Mississippi's long-arm

statute, the alleged tort was committed, in part, in Mississippi because Plaintiffs' injuries occurred in Mississippi and the product failed in Mississippi. The Court's exercise of personal jurisdiction over the Nissan Defendants is thus proper under the tort prong of Mississippi's long-arm statute.

14.    The Nissan Defendants have minimum contacts with Mississippi such that maintenance of the suit does not offend the traditional notions of fair play and substantial justice.

15.    The Court has specific jurisdiction over the Nissan Defendants because issues to be resolved in the litigation derive from, and are connected with, the very controversy that establishes jurisdiction: the incident which occurred in Mississippi and the manufacture and distribution of the subject vehicle in Mississippi with the intent to derive profits from Mississippi. The Nissan Defendants' suit-related conduct creates a substantial connection with the forum state because the Nissan Defendants maintain a substantial physical presence in Mississippi; the subject vehicle was assembled in Mississippi and distributed in Mississippi; the subject vehicle was purchased in Mississippi from a Mississippi resident and citizen operating a Nissan dealership; the Nissan Defendants were involved in the sale of the product through the dealership; the subject incident occurred in Mississippi; and, the Plaintiffs' cause of action arises out of or relates to those forum-related contacts. Due process requirements are met because the Nissan Defendants have sufficient minimum contacts and they have purposefully directed them at the forum state; a nexus exists between the Nissan Defendants' contacts and the Plaintiffs' claims; and the exercise of jurisdiction is fair and reasonable. A nexus between the Defendants' contacts and the Plaintiffs' claims exists because the cause of action arises out of and is related to the Nissan Defendants' forum contacts. The Defendants' contacts with the State of Mississippi include manufacturing operations, direct sales to Mississippi customers, and contracts with Mississippi entities to

4

assemble, market, sale, and distribute the vehicles in Mississippi. The Nissan Defendants likewise distribute and sale vehicles to numerous purchasers in the State of Mississippi.

## FACTUAL BACKGROUND

16. This is a strict liability, breach of warranty and negligence action stemming from a single vehicle rollover crash that occurred on Saturday, October 3, 2019, on Highway 528 near Milepost 22.939 in Jasper County, Mississippi. Plaintiff Cooper was traveling west bound on East Main Street as the driver of the subject vehicle, a 2008 Nissan Titan, when he entered a curve, hydroplaned, departed the paved surface, entered a ditch, and overturned.

17. Mississippi law applies because the subject vehicle (2008 Nissan Titan SE, VIN 1N6BA07D18N310796) was manufactured in Mississippi, distributed in Mississippi, placed into the chain of commerce in Mississippi and the incident occurred in Mississippi involving Mississippi residents. Plaintiffs seek damages for catastrophic personal injuries, permanent damages, future life care, and all other elements available under Mississippi law.

## FACTS COMMON TO ALL CLAIMS

18. The subject single-vehicle rollover incident occurred on October 3, 2019, at approximately 5:00 p.m. on Highway 528, westbound, in Jasper County, MS.

19. The subject 2008 Nissan Titan was traveling west bound on East Main Street when it was reported to have entered a curve, hydroplaned, left the paved road surface, and overturned.

20. Plaintiff Jason Cooper, Jr., a Minor, was driving the subject vehicle at the time of the crash and Kordarious R. Barnett was a right front passenger. Plaintiff Cooper was properly belted at the time of the crash.

21. The subject defective vehicle is a 2008 Nissan Titan crew cab (VIN 1N6BA07D18N310796), manufactured and assembled at the Nissan plant in Canton, Mississippi.

5



**NISSAN TITAN**

22.     The subject 2008 Nissan Titan was purchased by Tobie and Tracie Stenson on October 16, 2007 from the Defendants in Laurel, Mississippi and Defendants' employee and sales representative, Frank "Turk" Cooley. The title to the vehicle was later transferred to Plaintiffs Tobie and Kenyana Stenson.

23.     The dealership Defendants are currently known as Kim's Automotive, Inc., but were owned by Chris Posey, Individually and/or Defendant Chris Posey, Inc. at the time of purchase. The facts surrounding the transfer of ownership of the Dealership are currently unknown, but it is known that Defendant Kim's Automotive, Inc. operates at the same location, with some of the same employees, same phone number, and essentially is carrying out the same business, all with the permission of the Nissan Defendants. The Plaintiffs reserve the right to allege and prove successor liability under applicable Mississippi law.

24.     At all times relevant to the Second Amended Complaint, and upon information and belief, the Dealership Defendants were an authorized dealer of Nissan products and provided sales and servicing of Nissan products in a manner that served the interests of both itself and Nissan as required by the written agreements.

25.     The standard Sales and Service Agreement between the Nissan Defendants and the Dealership Defendants placed the responsibility of actively promoting the retail sale of Nissan products upon the Dealership Defendants, requiring the use of aggressive, sound, and ethical

selling practices and a conscientious regard for customer service, and the Dealership was forbidden from misleading or unethical practices and activities.

26.     Under the standard Nissan Sales and Service Agreement, Nissan retained the right to evaluate and monitor the performance of Dealership Defendants' employees, using sales objectives and criteria established by the Nissan Defendants.

27.     Under the standard Nissan Sales and Service Agreement, the Nissan Defendants retained the right to establish sales objectives for the Dealership Defendants.

28.     Under the standard Nissan Sales and Service Agreement, the Dealership Defendants had the obligation to organize and maintain a sales force that included qualified and trained sales managers and salespeople who were educated and trained in, among other things, all standard and optional safety features associated with Nissan products. The duty to properly train remained with the Nissan Defendants under the Agreement.

29.     Under the standard Nissan Sales and Service Agreement, Nissan retained the right to monitor, observe, and advise the Dealership Defendants concerning the qualifications, performance, and ability of the sales force as it related to Nissan products.

30.     Under the standard Nissan Sales and Service Agreement, the Nissan Defendants offered sales training courses for sales personnel, which included information regarding product and safety features and components of Nissan products, while also retaining the right to monitor, observe and advise the Dealership Defendants regarding sales force training and management.

31.     Under the standard Nissan Sales and Service Agreement, the Dealership Defendants were required to organize and maintain, using Nissan resources, a complete service organization with competent, trained managers and staff where were trained and educated about the Nissan product features.

7

32. Under the standard Nissan Sales and Service Agreement, the representatives of the Dealership Defendants were charged with the responsibility of fully and accurately disclosing to all customers material information about Nissan's products and services, including, but not limited to, features associated with the product, including safety features, both standard and optional.

33. Under the standard Nissan Sales and Service Agreement, the Nissan Defendants made available to the Dealership Defendants a form of "Datanet" system, which included an electronic data communication and processing system designed to facilitate the accurate and prompt communication between the Dealership Defendants and the Nissan Defendants, including sales and operations information.

34. According to published literature for the VIN of the subject vehicle, the subject 2008 Nissan Titan was described as a Class D truck equipped with 4-wheel ABS, driver and passenger frontal air bags, 3-point manual seat belts, side air bags and curtain side air bags.

35. According to Nissan sales and marketing literature for the 2008 Titan, the truck was represented as having a fully boxed steel frame, rather than a conventional 3-sided C-rail design, for added strength and safety, as well as a steel-reinforced ladder frame with eight welded cross-members for increased durability.

36. The 2008 Nissan Titan was also marketed and represented as having 4-wheel limited slip (ABLS), which the Nissan Defendants represented would help keep the wheels from spinning by automatically sensing wheel slippage and then applying the brakes to the slipping wheel and directing power to the wheels with the best traction.

37. The 2008 Nissan Titan was also marketed and represented as having Vehicle Dynamic Control (VDC) for handling control, a feature that the Nissan Defendants represented

was designed to reduce engine output and/or brake pressure application to specific wheels to help compensate for sudden moves and to avoid loss of control.

38.    The 2008 Nissan Titan was also marketed and represented by the Nissan Defendants as "one of the safest trucks on the road," coming equipped with Nissan's "Safety Shield," a comprehensive approach to safety, which the Nissan Defendants represented to include rigorous crash testing, over 50 standard safety features, available advanced technologies, an advanced air bag system, roof-mounted curtain air bags, front active head restraints, and a "first-in-class rollover sensor" that senses an impending rollover, and deployment of a roof-mounted curtain air bag to provide "enhanced head protection." These features created a consumer expectation of safety.

39.    The Dealership Defendants advertised and branded themselves as a professional Nissan dealer, providing high quality products, treating customers with high quality sales staff, and aiming to be recognized by customers as a top-level Nissan dealer.

40.    The Nissan Titan is a full-size pickup truck manufactured in the U.S. for the North American market. It was first produced in 2003, as a 2004 model.

41.    From the time of the subject incident to present, Plaintiff Jason Cooper has been under the care of Plaintiffs Tobie and Kenyana Stenson.  Plaintiffs provide all care for Plaintiff Cooper, both physically and financially.

42.    Defendant NMC is a Japanese multinational manufacturer of automobiles headquartered in Nishi-ku, Yokohama, Japan, and sells vehicles under the Nissan, Infiniti and Datsun brands and operates as the Nissan Group.

43.    Defendant NMC first entered the U.S. market to sell vehicles in 1958 and began importing and manufacturing Datsun vehicles in the U.S. under the name Nissan Motor Corporation in U.S.A. in 1960.

44.    Defendant NMC is reportedly the sixth largest automaker in the world and, as of 2014, was the largest car manufacturer in North America.

45.    Defendant NNA was reportedly created to coordinate all of Nissan's various activities in North America and to improve the design, development, manufacturing and marketing of Nissan vehicles.[1]

46.    Defendant NNA is headquartered in Franklin, Tennessee, and heads all North American operations that involve styling, engineering, consumer and corporate financing, sales and marketing, distribution and manufacturing for the U.S., Canada, and Mexico.[2]

47.    Defendant NNA operates four manufacturing facilities in the U.S., one of which is located in Canton, Mississippi. The assembly plant in Canton began producing vehicles in 2003, and has an annual production capacity of 450,000 vehicles, including the Titan model.[3]

48.    Defendant NNA also operates a Technical Center in Michigan, and Research Center in California, a Test Center in Arizona, and a Design Studio in California.

49.    The Nissan Defendants together jointly advertise and brand themselves as professional vehicle designers who provide high quality product; treat customers with high quality sales staffs, and aim to be recognized by customers as a brand offering top-level quality in both products and sales and services.[4]

## COUNT I
## STRICT LIABILITY OF DEFENDANTS

---

[1]    https://www.nissanusa.com/about/corporate-information.html
[2]    Id.
[3]    Id.
[4]    https://www.nissan-global.com/EN/SUSTAINABILITY/REPORT/SOCIAL/QUALITY/.

50.     Plaintiffs incorporate paragraphs 1-49 as if repeated and restated word for word.

51.     At all times relevant to the Second Amended Complaint, the Defendants held themselves out as professionals in the business of designing, developing, testing, manufacturing, assembling, marketing and/or distributing vehicles to consumers for profit, including in Mississippi.

52.     The subject vehicle was a 2008 model Nissan Titan that was manufactured in Mississippi and sold in Mississippi for consumer use.

53.     At present, the Plaintiffs do not possess or have access to Nissan's specifications and therefore reserve the right to amend the complaint to allege material deviations from the specifications once discovery requires the production of those specifications.

54.     The subject Nissan Titan was defective at the time of assembly because it failed to contain adequate warnings or instructions about the dangers associated with the vehicle when used as marketed and intended in terms of handling, stability, rollover resistance, and occupant protection in a rollover, and failed to apprise the unsophisticated consumer of the significance of optional rollover features and the severity of the risks involved with the design when not equipped with these features so that the consumer could make an informed choice.

55.     The subject Nissan Titan was defective by design in terms of handling, stability, rollover resistance, and rollover occupant protection, including the fact that the design is not reasonably safe without the rollover protection features (stability control; rollover sensing; rollover air bags and side air bags) as standard when used as the product was marketed and intended to be used.

56.     The subject Nissan Titan breached express warranties and failed to conform to express factual representations about safety, which the Plaintiff owners' justifiably relied on in

11

electing to use the product. The specific express warranties are the ones shown above about the safety of the truck.

57.     The defective condition of the subject Nissan Titan rendered the product unreasonably dangerous to the user or consumer in that the risks outweighed the benefits of the design and was dangerous beyond the extent expected by the reasonable consumer.

58.     The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought, including causing enhanced or increased severity of the injuries.

59.     The defective design of the subject Nissan Titan was not caused by a characteristic of the product that is inherent in the product or a generic aspect of the product, and the defective design could easily have been eliminated without compromising the product's usefulness or desirability.

60.     At the time the product left the control of the manufacturer, the manufacturer knew, or in light of reasonably available knowledge should have known, about the danger and risk that caused the damage for which recovery is sought and an ordinary user or consumer would not have realized its dangerous condition.

61.     The Plaintiffs were not knowledgeable of a condition of the subject vehicle that was unsafe or inconsistent with the safety.

62.     The Plaintiffs did not appreciate the danger caused by the defective condition of the product and did not expose themselves to a danger that they were aware of when purchasing or using the product.

63.     At the time the subject Nissan Titan was assembled and left the control of the Nissan Defendants, the Nissan Defendants knew, or in light of reasonably available knowledge or

in the exercise of reasonable care should have known, about the dangers that caused the damage
for which recovery is sought.

64.    At the time the subject Nissan Titan was assembled and left the control of the
Nissan Defendants, the vehicle failed to function as expected and there existed feasible design
alternatives that would have to a reasonable probability prevented the harm. These feasible design
alternatives would have to a reasonable probability prevented the harm without impairing the
utility, usefulness, practicality or desirability of the product to users or consumers.

65.    The aforementioned defects were a proximate cause of the Plaintiffs' injuries and
damages.

**COUNT II**
**NEGLIGENCE OF NISSAN DEFENDANTS**

66.    Plaintiffs incorporate paragraphs 1-54 as if repeated and restated word for word.

67.    At all times relevant to the Second Amended Complaint, the Nissan Defendants
held themselves out to the consuming public as professionals in the business of providing safe and
reliable automotive products for consumers use. As such, the Nissan Defendants owed consumers,
including the Plaintiffs, a legal duty to carry out these responsibilities in reasonably safe fashion,
especially give their public proclamations of safety.

68.    As a professional making consumer products, the Nissan Defendants had a non-
delegable duty to provide products that were reasonably safe and equipped with safety features
that were essential when the product was used as intended, especially given the experience and
knowledge of the Defendants about the gravity of the risk.

69.    As a distributor of consumer vehicles that only provided certain optional safety
features, the Nissan Defendants had a legal duty to ensure consumers were provided with sufficient

information to make an intelligent and informed decision about whether to purchase the options or, if waived, have sufficient information to knowingly waive the options after full disclosure.

70.    In Mississippi, it is well-accepted that in a transaction like the purchase of a car, a degree of trust or a duty of fairness exists that carries with it a duty on the part of a distributors to disclose facts peculiarly within one party's knowledge, and a failure to disclose facts sufficient to meet this fairness test is a breach of that duty. This duty was non-delegable and belonged to each of the Defendants.

71.    The Nissan Defendants breached these duties by (a) negligently designing the product; (b) negligently training and educating the sales force at Defendant Posey Nissan; (c) negligently making the safety features optional only; and (b) negligently failing to disclose facts necessary for the Plaintiffs to make an informed decision about whether to purchase the optional safety features, including electronic stability control, side air bags, rollover sensing, rollover air bags, and rollover pretensioners. These are features that, absent education and full disclosure, are essential to the safety of the product and beyond the common knowledge of the consumer.

72.    The Nissan Defendants knew the risks involved, knew of the dangers inherent in the product when not equipped with these safety features, knew or should have known that dealerships were not being trained reasonably to adequately educate consumers on the importance and necessity for these features, and knew of the importance of making safety standard as evidenced by the fact that the Defendants subsequently made these features standard on the Nissan Titan.

73.    The negligence of the Nissan Defendants was a proximate cause of Plaintiffs' damages and injuries.

## COUNT III
## NEGLIGENCE OF KIM'S AUTOMOTIVE, INC., CHRIS POSEY CHEVROLET-NISSAN, INC. AND CHRIS POSEY, INC.

74.     Plaintiffs incorporate paragraphs 1-49 as if repeated and restated word for word.

75.     At all times relevant to the Second Amended Complaint, Defendant Chris Posey

Chevrolet-Nissan, Inc., which was owned and operated by Defendant Chris Posey, Inc. and is now

known as Defendant Kim's Automotive, Inc., was an authorized dealer of Nissan vehicles pursuant

to a Dealer Sales & Service Agreement ("Agreement") with NNA.

76.     The Agreement established Defendant Posey Nissan as an authorized dealer of

Nissan products and to provide sales and servicing of Nissan Products for, among others, the

Nissan Defendants.

77.     As an authorized dealer, Defendant Posey Nissan assumed certain responsibilities

and duties, including (a) the duty to deal fairly with the consuming public; (b) to actively promote

the retail sale of Nissan products; (b) to provide efficient service of Nissan products; (c) to provide

aggressive, sound, and ethical selling practices and conscientious regard for customers; (d) to

engage in not deceptive, misleading or unethical practices or activities with customers; (e) to

display Nissan trademarks; (f) to actively and effectively promote the sale of Nissan vehicles; (g)

to build and maintain consumer confidence in Nissan; (h) the retention of qualified management;

(i) to make decisions concerning the hiring and firing of employees with due regard to the Nissan

Defendants' standards and procedures for evaluating their performance; and (j) to maintain

qualified and trained sales people and sale management to enable to the dealer to fulfill its

responsibilities with regard to the sales and marketing of Nissan vehicles to consumers.

78.     At all times relevant to the Second Amended Complaint, the Agreement between

the Nissan Defendants and Defendant Posey Nissan required that the Nissan Defendants provide

sales training courses for Defendant Posey Nissan's sales personnel, and Defendant Posey Nissan was required to have members of the sales organization attend such training courses so that they would be educated and knowledgeable about all features, especially safety features.

79.    Having undertaken these obligations on behalf of Nissan, Defendant Posey Nissan had a legal duty to consumers to do so using reasonable care and in a non-negligent fashion.

80.    As distributors of consumer vehicles that only provided certain safety features as optional features, Defendants likewise undertook the responsibility and the legal duty to educate its sales force on the risks and benefits of the safety features and to ensure that consumers, including the Plaintiffs, were provided with sufficient information to make intelligent and informed decisions about whether to purchase the options or, if waived, have sufficient information to knowingly waive the purchase of the optional safety features.

81.    In addition to the contractual responsibilities and duties, in Mississippi, it is well-accepted that in a transaction like the purchase of a car, a degree of trust or a duty of fairness existed that carried with it a duty on the part of a seller to disclose facts peculiarly within one party's knowledge (herein the dealer), and a failure to disclose facts sufficient to meet this fairness test is a breach of that duty.

82.    Defendants breached the foregoing duties by (a) negligent training of its sales force and (b) negligently failing to disclose facts necessary for the Plaintiffs to make an informed decision about whether to purchase optional safety features, including electronic stability control, side air bags, rollover sensing, rollover air bags, and rollover pretensioners.

83.    Defendants knew, or should have known, that the risks involved, including the dangers inherent in the product when not equipped with these optional safety features, posed a

high degree of risks to consumers, like the Plaintiffs, who were not equipped with the knowledge to knowingly waive the protection of these optional components.

84.     The negligence of Defendants Chris Posey Chevrolet-Nissan, Inc., Chris Posey, Inc. and Kim's Automotive, Inc., were a proximate cause of Plaintiffs' damages and injuries.

### COUNT IV
### BREACH OF WARRANTY OF ALL DEFENDANTS

85.     Plaintiffs incorporate paragraphs 1-49 as if repeated and restated word for word.

86.     At all times relevant to the Second Amended Complaint, Defendants were selling consumer products for consumer use as those terms are used and defined under applicable law.

87.     The subject vehicle was defective and unreasonably dangerous as manufactured, marketed and sold because it was not as safe as it was represented to be and was not equipped with safety features which it was represented to be equipped with.

88.     Defendants breached the warranties of merchantability, fitness for a particular purpose, and express warranties made about the durability and safety of the subject vehicle because the vehicle was not in a merchantable condition, was not fit for its intended use, and it did not have the level of safety or safety features represented by the Defendants and Frank "Turk" Cooley.

89.     At all times relevant to the Second Amended Complaint, Plaintiffs relied on Defendants' representations about the vehicle by and through agent and employee, Frank "Turk" Cooley.

90.     The foregoing described breaches of warranty were a proximate cause of Plaintiffs' damages and injuries.

### COUNT V
### PUNITIVE/EXEMPLARY DAMAGES

91.     In addition to compensatory damages, the Plaintiffs are seeking punitive damages

from the Nissan Defendants (as opposed to the Dealership Defendants) because Nissan's conduct constitutes reckless, grossly negligent, willful, wanton, malicious behavior that needs to be punished in order to deter others from participating in similar future misconduct. Given the Nissan Defendants' knowledge of vehicle rollover-related issues; knowledge of the dangers associated with rollovers in light trucks; knowledge of existing state of art technology to protect occupants in rollovers; and given their knowledge of the importance of these features in reducing the risk of rollovers and rollover-related injuries, the Nissan Defendants took the steps set forth herein in conscious disregard for the potential consequences and under circumstances for which a jury could determine that they willfully, wantonly, recklessly, maliciously, and consciously indifferent to the consequences, endangered human life, all for financial reasons. The amount of punitive damages to be awarded is within the discretion of the jury.

WHEREFORE PREMISES CONSIDERED, Plaintiffs seek an award of damages to be determined by the jury for all damages of whatever kind and type available under Mississippi law including punitive damages. Plaintiffs also request such general and equitable relief as this Court sees fit.

Dated this the 3rd day of May, 2022.

Respectfully submitted,

*/s/ John L. Davidson*
John L. Davidson, Esq., MS Bar No. 9073
ATTORNEY FOR PLAINTIFFS

Davidson Bowie, PLLC
1062 Highland Colony Parkway, Suite 275
Ridgeland, Mississippi 39157
Telephone: (601) 932-0028
jdavidson@dbslawfirm.net

Tab Turner, Esq. *(admitted pro hac vice)*
Turner & Associates, P.A.
4705 Somers Avenue, Suite 100
North Little Rock, Arkansas, 72116

Telephone: (501) 791-2277
tab@tturner.com